# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAUL SURGENOR,
1205 E St NE
Washington, DC 20002

       Plaintiff,

v.

NISSAN-INIFITI LT LLC
     Serve:   CSC-Lawyers Incorporating Service
             Company
             7 St. Paul St.
             Suite 820
             Baltimore, MD 21202

EXPERIAN INFORMATION SOLUTIONS, INC.,
     Serve:  CT Corporation System
            1015 15th St, NW, Suite 1000
            Washington, D.C. 20005

EQUIFAX INFORMATION SERVICES, LLC,
     Serve:  Corporation Service Company
            1090 Vermont Ave, NW
            Washington, D.C. 20005

INNOVIS DATA SOLUTIONS, INC.
     Serve:   CSC-Lawyers Incorporating Service
             Company
             7 St. Paul St.
             Suite 820
             Baltimore, MD 21202

TRANS UNION, LLC
     Serve:   CSC-Lawyers Incorporating Service
             Company
             7 St. Paul St.
             Suite 820
             Baltimore, MD 21202

       Defendants.

Civil Action No. 1:21-cv-2851

## COMPLAINT

COMES NOW, the Plaintiff, Paul Surgenor, by counsel, and files this Complaint against Defendants Nissan-Infiniti LT LLC ("Nissan"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Innovis Data Solutions, Inc. ("Innovis"), and Trans Union, LLC. Plaintiff alleges as follows:

### INTRODUCTION

1.      This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.      The FCRA's purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports, §1681i, and have reasonable procedures to ensure maximum possible accuracy of the information they report about consumers, §1681e(b).

3.      The case concerns Defendants' erroneous reporting of Plaintiff's auto loan. Even after Plaintiff disputed the inaccurate and derogatory information, Defendants continued to report the inaccurate information, causing Plaintiff to suffer damages.

4.      Accordingly, Plaintiff alleges that Equifax, Experian, Innovis, and Trans Union violated two FCRA provisions: 15 U.S.C. §1681e(b), by failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports, and 15 U.S.C. §1681i by failing to fulfill their

reinvestigation duties.

5.        Plaintiff also alleges that Nissan violated the FCRA, 15 U.S.C. § 1681s-2(b)(1), by failing to fully and properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies.

## JURISDICTION

6.        The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7.        Venue is proper in this District under 28 U.S.C. § 1391(b) because the acts and transactions that form the basis of this Complaint occurred here.

## PARTIES

8.        Plaintiff is a natural person who lives in the District of Columbia and is a "consumer" as defined by § 1681a(c) of the FCRA.

9.        Defendant Equifax is a foreign limited liability company authorized to do business in District of Columbia. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

10.        Defendant Experian is a foreign company authorized to do business in the District of Columbia. Experian is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

11.     Defendant Innovis is a foreign company conducting business in the District of Columbia. Innovis is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Innovis is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant Trans Union is a foreign limited liability company conducting business in the District of Columbia. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.     Defendant Nissan is a foreign company doing business in the District of Columbia and is a furnisher as governed by the FCRA.

## FACTS

14.     In July 2017, Plaintiff entered into a two-year lease financed by Nissan.

15.     Under the lease, Plaintiff had the option to return or purchase the car at the end of the lease's term.

16.     In June 2019, Nissan notified Plaintiff that his final lease payment was due.

17.     In response to this notification, Plaintiff logged onto his Nissan web portal and confirmed that he wanted to purchase the car.

18.     Nissan's web portal provided Plaintiff with instructions on how to purchase the car. Specifically, Nissan told Plaintiff to go to his homepage and request his balance and pay-off instructions.

19.    Plaintiff complied with Nissan's instructions and requested his pay-off quote. He also submitted his final monthly payment due on the lease.

20.    The pay-off quote that Plaintiff received from Nissan instructed Plaintiff to make his pay-off payment to the Nissan dealership where he leased the car.

21.    On June 20, 2019, Nissan sent Plaintiff an email stating that it had processed his final payment. Nissan's email also stated that it was canceling his recurring payment schedule because he had met all of his contractual obligations under the lease.

22.    Plaintiff secured funding for the payoff balance with D.C. Credit Union in late June 2019.

23.    A D.C. Credit Union employee called the Nissan dealership and confirmed the address where the payment should be sent.

24.    D.C. Credit Union mailed the check to the Nissan dealership exactly as the dealership instructed on July 1, 2019.

25.    However, several months later, Plaintiff was interested in purchasing a home and during the application process, learned that Nissan was reporting to the credit reporting agencies that he missed lease payments in August, September, and October 2019.

26.    This information was incorrect, because as stated above, Plaintiff made all of his monthly lease payments though the end of the lease in July 2019, and Nissan had confirmed that he had complied with all of his contractual lease obligations.

27.    Accordingly, Plaintiff disputed this information with Equifax and Trans Union.

28.    Upon information and belief, Equifax and Trans Union forwarded Plaintiff's disputes to Nissan.

29.     Upon information and belief, Equifax, Trans Union, and Nissan understood the nature of Plaintiff's dispute and the information that he was disputing.

30.     Equifax, Trans Union, and Nissan failed to properly investigate Plaintiff's dispute and remove the erroneous information from Plaintiff's credit reports.

31.     Instead, they each verified the late payments as correct and the inaccurate information remained on Plaintiff's credit reports.

32.     In late 2020, Plaintiff disputed the inaccurate payment history with Experian.

33.     Upon information and belief, Experian forwarded Plaintiff's disputes to Nissan.

34.     Upon information and belief, Experian and Nissan understood the nature of Plaintiff's dispute and the information that he was disputing.

35.     Experian and Nissan failed to properly investigate Plaintiff's dispute and remove the erroneous information from Plaintiff's credit reports.

36.     In March 2021, Plaintiff sent detailed follow-up disputes to Equifax, Trans Union, and Innovis. He provided detailed information about the inaccuracies and provided supporting documentation to show that the reporting about his Nissan account was inaccurate.

37.     Upon information and belief, Equifax, Trans Union, and Innovis forwarded Plaintiff's disputes to Nissan.

38.     Upon information and belief, Equifax, Trans Union, Innovis, and Nissan understood the nature of Plaintiff's dispute and the information that he was disputing.

39.     Equifax, Trans Union, Innovis, and Nissan failed to properly investigate Plaintiff's dispute and remove the erroneous information from Plaintiff's credit reports.

40.     As a result of the Defendants' conduct, Plaintiff suffered actual damages, including the inability to obtain a mortgage, credit denials, a decreased credit score, damage to reputation, and emotional distress.

### *Defendants' Willful Violation of the FCRA*

41.     As a standard practice, Equifax, Experian, Innovis, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibility[y] imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

42.     Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, Innovis, and Trans Union automatically generated their "investigation" results once the furnisher provided their responses to Plaintiff's disputes, verifying that the account was accurately reporting, and no Equifax, Experian, Innovis, or Trans Union employee took any additional steps after the furnisher provided its responses to Plaintiff's disputes.

43.     Instead, Equifax, Experian, Innovis, and Trans Union blindly accepted the furnisher's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

44.     Equifax, Experian, Innovis, and Trans Union continue the practice of parroting the response from their furnishers even though they have been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

45.     Equifax, Experian, Innovis, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

46.     Instead, Equifax, Experian, Innovis, and Trans Union intentionally choose not to comply with the FCRA to lower their costs and increase profits. Accordingly, Equifax, Experian, and Trans Union's violations of the FCRA were willful.

47.     In addition, Nissan's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, Nissan's conduct was accomplished through intended procedures, which prioritizes efficiency and speed over making sure that the disputes are investigated thoroughly and accurately.

## COUNT ONE:
### Violation of 15 U.S.C. § 1681e(b)
### Defendants Equifax, Experian, Innovis, and Trans Union

48.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

49.     Equifax, Experian, Innovis, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff.

50.     As a result of Equifax's, Experian's, Innovis's and Trans Union's actions, Plaintiff suffered real and actual harm and injury, including a reduced credit score, credit denials, and emotional distress.

51.     Equifax's, Experian's, Innovis's, and Trans Union's conduct in violating §
1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages,
punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C.
§ 1681n. In the alternative, they were negligent, which entitles Plaintiff to recover under 15 U.S.C.
§ 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**Defendants Equifax, Experian, Innovis, and Trans Union**

52.     Plaintiff incorporates by reference each of the allegations set forth in the preceding
paragraphs.

53.     Equifax, Experian, Innovis, and Trans Union violated multiple sections of § 1681i,
including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine
whether the disputed information was inaccurate and record the current status of the disputed
information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing
to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4);
(3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit
file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4)
failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in
violation of §1681i(a)(5)(A).

54.     As a result of Equifax's, Experian's, Innovis's and Trans Union's conduct, Plaintiff
suffered concrete and particularized harm, including without limitation: loss of credit, credit
damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

55.     Equifax's, Experian's, Innovis's and Trans Union's conduct in violating § 1681i
was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive

9

damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

**COUNT THREE:**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(A)**
**Defendant Nissan**

56.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

57.     On one or more occasion within the past two years, by example only and without limitation, Nissan violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

58.     Plaintiff disputed the inaccurate information about his Nissan account with Equifax, Trans Union, Innovis, and Experian.

59.     When Plaintiff disputed the account with the credit bureaus, Nissan used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers.

60.     E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

61.     When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

62.     Upon information and belief, the ACDV form is the method by which Nissan has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

63.     Upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute via an ACDV to Nissan.

64.     Nissan understood the nature of Plaintiff's disputes when it received the ACDV forms.

65.     Upon information and belief, when Nissan received the ACDV form containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

66.     Upon information and belief, when Nissan receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

67.     As a result of Nissan's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, credit denial, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

68.     Nissan's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Nissan was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(B)**
**Defendant Nissan**

69.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

70.     On one or more occasion within the past two years, by example only and without limitation, Nissan violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

71.     As Plaintiff detailed in the previous Count, Nissan has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

72.     Nissan is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

73.     None of the Defendants contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

74.     Nissan understood Plaintiff's disputes and that Plaintiff claimed the derogatory information was inaccurate.

75.     As a result of Nissan's violation of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, credit denial, damage to reputation, embarrassment, humiliation, and other emotional distress.

76.     Nissan's violation of 15 U.S.C. § 1681s-2(b)(1)(B) was willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

77.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Nissan in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PAUL SURGENOR**

By:_____*/s/ Kristi C. Kelly*_____
Kristi Cahoon Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*